FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

STANLEY MILLER,

                  Plaintiff,

    v.

BOILERMAKER-BLACKSMITH
NATIONAL PENSION TRUST; and
JOHN FULTZ, agent of John Fultz as
Fiduciary of the Boilermaker-
Blacksmith National Pension Fund,

                Defendant.

NO: 2:20-CV-317-RMP

ORDER DENYING PLAINTIFF'S
MOTION FOR RECONSIDERATION

BEFORE THE COURT is Plaintiff's Motion for Reconsideration of Order

Compelling Discovery or for Clarification, ECF No. 49. If the Court denies

reconsideration, Plaintiff also moves to further stay enforcement of the Order

Compelling Discovery pending Miller's petition for review of the Order by the

Ninth Circuit, and requests that the Court certify the issue[s] for appeal pursuant to

28 U.S.C. § 1292(b). *See* ECF No. 48. The Court has considered the motions, the

record, and is fully informed.

## BACKGROUND

Plaintiff Stanley Miller ("Miller"), former owner of PSF Industries, Inc. ("PSF"), filed suit seeking declaratory relief holding that the loan payments he received from PSF in July 2017 and June 2018 did not violate 29 U.S.C. §1392(c) because "a principal purpose" was not to "evade or avoid" PSF's withdrawal liability. ECF No. 1 at 5.

Defendants Boilermaker-Blacksmith National Pension Fund and John Fultz (collectively, the "Fund") asserted counterclaims against Plaintiff seeking to recover the payments made by PSF to Miller. ECF No. 9. The Fund alleges that the transactions between PSF and Miller were made with a principal purpose of evading or avoiding withdrawal liability to the Fund, *see* 29 U.S.C. § 1392(c), and with the intent to hinder, delay or defraud the Fund and other creditors, in violation of Washington State law, RCW 19.40.041. *Id.* at 13–19. The Fund further alleges that the payments to Miller constituted a transfer by an insolvent debtor to an insider for an antecedent debt in violation of RCW 19.40.051, and that Miller knew at the time of the transfers that PSF was insolvent. *Id.* at 19–20.

On March 21, 2021, the Fund moved to compel responses to its Requests for Production, seeking communications or correspondence regarding or relating to any payments on or repayment of loans between Miller and PSF. *See* ECF No. 28. The requested correspondence was withheld by Miller on the basis of attorney-client

privilege, work-product doctrine, and the common interest privilege. *See* ECF No. 36. Miller failed to timely provide a privilege log. ECF No. 28 at 3.

Miller argued that exchanges among the participants to a Joint Defense Agreement ("JDA"), entered into to defend against the Fund's underlying withdrawal liability claim against PSF, were properly withheld as confidential communications not subject to disclosure. *See id.*

On April 16, 2021, the Court granted the Fund's Motion to Compel. ECF No. 44. In so holding, upon considering the *Burlington* factors, the Court found that the deficiencies of Miller's privilege log, the delay in producing the log, and the absence of mitigating circumstances justified a waiver of any applicable privileges. ECF No. 44 at 5–10; *see Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist., of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("Boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). The Court further found that although Miller's untimely privilege log identified several communications between Miller and his attorney, Miller failed to establish that the nature and content of the communications were privileged. ECF No. 44 at 11.

Finally, in rejecting Miller's assertion of the common interest privilege to shield the withheld correspondence, the Court held that communications or correspondence related to loans from Miller to PSF and payments or repayment of the same were not communications made in furtherance of the common interest or

joint legal strategy identified by Miller as defending against PSF's withdrawal liability. ECF No. 44 at 14–15.

However, the Court allowed a "limited exception" to Plaintiff's previously found waiver with respect to Request for Production Nos. 9 and 10–12 subpart (d), seeking correspondence "regarding or related to any money owed, or potentially owed, to the fund by PSF and/or any withdrawal liability, or potential withdrawal liability, owed to the Fund by PSF." ECF Nos. 29-1 at 4–5, 44 at 16 ("[T]o the extent that the responsive documents to Request for Production Nos. 9, and 10–12 subpart (d) were made in furtherance of the purported joint interest in defending against withdrawal liability, Plaintiff may continue to assert the privileged nature of those documents, and supplement its privilege log accordingly.").

Miller now moves for reconsideration of the Court's Order Granting Defendants' Motion to Compel pursuant to Federal Rules of Civil Procedure 60(b)(1) and (6), arguing that the Court's Order, ECF No. 44, should be reconsidered because "it is based in material part on a mistaken understanding of the facts and a misapprehension of the extent of the privileges allowed under the law." ECF No. 49 at 10. In the alternative, Miller requests that the Court "clarify its Order to only require production of communications regarding Miller's loans, and not PSF's withdrawal liability." *Id.* at 2. The Court stayed enforcement of its previous Order, ECF No. 44, pending Miller's Motion for Reconsideration. ECF No. 53.

In the event the Court denies reconsideration, Miller moves to further stay enforcement of the Order pending Miller's petition for appellate review and requests that the Court certify the issue[s] for appeal pursuant to 28 U.S.C. § 1292(b). ECF No. 48 at 4–5. The Fund contends that a stay beyond the Court's present ruling is unnecessary because Miller has failed to establish that this case is suitable for interlocutory appeal. ECF No. 52 at 6–9.

**LEGAL STANDARDS**

"Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Rule 60(b)(1) permits a court to grant relief from an order where there has been "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. Pro. 60(b)(1); *see also Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982) ("The law in this circuit is that errors of law are cognizable under Rule 60(b).") (citation omitted).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of*

*Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *Sch. Dist. No. 1J*, 5 F.3d at 1263 (citation omitted).

Alternatively, Miller asks the Court to further stay enforcement pending Miller's petition for review of the Order by the Ninth Circuit and certify the issue[s] for appeal pursuant to 28 U.S.C. § 1292(b).

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the district judge] shall so state in writing in such order." 28 U.S.C. §1292(b).

## DISCUSSION

As a threshold matter, Miller takes issue with the Court's use of the terms "allegedly" and "purportedly" in referring to the Joint Defense Agreement ("JDA"). ECF No. 49 at 3. To the extent that the Court's use of "allegedly" and "purportedly" in the Order suggests that the Court "questions the credibility of Miller's representation about the JDA," as Miller suggests, the Court notes that the record was devoid of the JDA when ruling upon the Fund's Motion to Compel. Even though Miller had not provided a copy of the JDA with his response brief, the Court

proceeded with the premise that a valid, JDA existed in rendering its decision. *See id*.

## I. Motion for Reconsideration

Miller argues that the Court should reconsider its previous ruling because (1) the Order is based upon the factual misunderstanding that the communications at issue already had been produced in the underlying litigation; and (2) the Order is based upon the factual misapprehension that the communications at issue were in furtherance of a commercial transaction. ECF Nos. 49 at 4, 7–9, 71 at 3–6.

### 1. Previous Production

Miller identifies as error the Court's "mistaken belief that Miller stated the communications at issue here previously had been produced in discovery or otherwise in the underlying litigation when that was not the case." ECF No. 49 at 4, 6.

In analyzing the third *Burlington* factor, regarding the magnitude of document production, the Court noted in the Order an apparent contradiction between the following statements by Miller: "[M]any or most of the documents and communications at issue were prepared and exchanged during the course of the actual litigation with the Fund," ECF No. 36 at 10, and "the task of producing the privilege log was not insignificant. It required a search through hundreds of separate email files . . . which had never been vetted, organized, compiled or produced in any

prior proceeding[,]" ECF No. 36 at 17.  *See* ECF No. 44 at 9–10 (citing *Burlington*

*Northern*, 408 F.3d at 1149).

On reconsideration, Miller clarifies his statements to mean that many or most

of the documents and communications at issue were prepared and exchanged

between the participants to the JDA during the course of actual litigation with the

Fund, but none was produced in that litigation or any other proceeding.  ECF No. 49

at 4.

However, Miller's clarification does not materially alter the Court's previous

"holistic analysis," specifically with respect to the third *Burlington* factor regarding

the magnitude of document production.  *See Burlington*, 408 F.3d at 1149.  Given

only Miller's representations that the "task of producing the privilege log was not

insignificant" and that "[c]ounsel for Miller was hampered by constraints on

available paralegal resources, due to a heavy office caseload," ECF No. 36 at 18,

Miller failed to persuade the Court that the magnitude of vetting email

communications, even over a span of 27 months, posed an undue burden.

Furthermore, any concerns as to the burden imposed by compiling a privilege

log should have been articulated to the opposing party before the Court's

intervention.  *See Burlington*, 408 F.3d at 1149 n. 3 ("We are well aware that,

particularly in discovery-intensive litigation, compiling a privilege log within 30

days may be exceedingly difficult . . . at the outset of discovery or, at the latest,

before Rule 34's 30–day time limit has expired, [litigants] may either secure an

appropriate agreement or stipulation from the relevant litigants or, failing that, apply for a discovery or protective order.").

To the extent this "misapprehension" with respect to the previous disclosure or nondisclosure of the documents and communications at issue was an "error," it does not materially alter this Court's previous application of the *Burlington* factors. Accordingly, the Court declines to reconsider the Order notwithstanding the fact, as presented by Miller, that the documents and communications at issue were not produced in previous litigation with the Fund or any other proceeding.

### 2. Applicability of Privileges in the Context of the Lender & Borrower Relationship

In the Order, the Court held that, even if application of the *Burlington* factors led to the conclusion of non-waiver, Miller had failed to demonstrate that the asserted privileges apply to each responsive document that has been withheld. ECF No. 44 at 10. In his Motion for Reconsideration, Miller disputes the Court's conclusion that the communications at issue regarding Miller's loans to PSF and repayment of the same occurred between Miller and PSF as lender and borrower, rather than because of and in anticipation of litigation. ECF No. 49 at 7–9.

Miller concedes that Miller and PSF "may have been *technically* adverse by virtue of their status as borrower and lender," but contends that "in reality[,] they were not adverse" because the communications at issue would not have occurred but for the Fund's claims. ECF No. 49 at 8 (emphasis in original) (citing *In*

*re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)) ("[A] document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'") (citation omitted).

However, communications regarding or relating to any payments or repayment of any loans would have existed, provided that Miller wanted to be repaid, notwithstanding any litigation with the Fund. In other words, communications regarding, for example, "when and how [the loans] would be repaid," ECF No. 49 at 9, occurred because of the existence of outstanding loans, not because of the Fund's claims. *See also* ECF No. 9 at 13 (The Fund claiming that "PSF transferred $898,000 to Miller on July 19, 2017 and $800,000 to Miller on August 21, 2017."); *and* ECF No. 50 at 6 (written JDA entered into effective August 30, 2017, purportedly memorializing a previous oral JDA and applying "retroactively to [participants'] previous claims and discussions in support of their common interests.").

Although the Fund's claims may have caused these communications related to the loans and repayment to occur sooner rather than later, the Fund's claims did not change that Miller and PSF were "technically" adverse parties in regard to the loans and repayment. ECF No. 44 at 10. The Joint Defense Agreement did not create, alter, or dissolve the preexisting relationship between Miller and PSF as lender and

borrower.  Furthermore, Miller's privilege log failed to sufficiently identify and distinguish those communications between Miller and PSF as participants to the JDA, from those communications between Miller and PSF made in the context of the lender and borrower relationship.

In the absence of newly discovered evidence, clear error, an intervening change or mistake in controlling law, the Court declines to reconsider its substantive analysis regarding the inapplicability of the claimed privileges.

Accordingly, consistent with the Court's previous Order, Plaintiff shall produce all responsive documents to Requests for Production Nos. 6 through 13 and 16 related to the loans between Miller and PSF and repayment of the same.  The Court will allow a limited exception to Plaintiff's previously found waiver, and to the extent that the responsive documents to Request for Production Nos. 9, 10(d), 11(d), and 12(d) were made in furtherance of the purported joint interest in defending against withdrawal liability, Plaintiff may continue to assert the privileged nature of those documents.  However, to the extent that the responsive documents to Request for Production Nos. 9, and 10–12 subpart (d) do not relate to PSF's alleged withdrawal liability, but rather, are related to the loans by Miller and payments by PSF, those documents shall be produced.

With respect to those documents highlighted by the Fund at ECF No. 60-1, the Court orders production of the highlighted entries unless those documents are responsive to Request for Production Nos. 9, 10(d), 11(d), and 12(d).  If so, Plaintiff

must provide a more complete description demonstrating that the communication at issue is privileged in the first instance, and if made with third parties, was made in furtherance of the purported joint interest in defending against withdrawal liability. *See* ECF No. 44 at 7 ("[T]he common interest privilege is an 'anti-waiver exception' which 'comes into play only if the communication at issue is privileged in the first instance.'") (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)).

The entries dated May 7, 2018, and July 19, 2018, and identified merely as "Email," with no further information aside from the identity of the author and recipients, must be produced as Miller has failed to supplement his privilege log with respect to those entries and has thus waived any applicable privileges by continuing to assert boilerplate objections.  ECF No. 60-1 at 5, 6.

## II.    Certification for Interlocutory Appeal

Since Miller's Motion for Reconsideration has been denied, the Court turns to Miller's request that the Court certify the issue[s] for appeal pursuant to 28 U.S.C. § 1292(b).  *Id.*  As presented by Miller, the question is "whether the communications at issue are protected by the attorney-client privilege, work [product] privilege, and the common interest doctrine[.]"  ECF No. 48 at 5.  Miller also contends that "to the extent the Order ruled that Miller and PSF could not have joint defense privileged communications because, as lender and borrower they were necessarily adverse," this case merits review under *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100, 110–

11 (2009) because it "involves a new legal question or is of special consequence." ECF No. 48 at 5.

Defendants oppose a further stay of enforcement of the Order and contend that Miller's request to certify its Order for interlocutory appeal to the Ninth Circuit via 28 U.S.C. § 1292(b) should be denied. ECF No. 52 at 6–11.

**A. 28 U.S.C. § 1292(b)**

As noted above, "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the district judge] shall so state in writing in such order." 28 U.S.C. §1292(b).

To grant a § 1292(b) motion, a district court must first find "that the certification requirements of the statute have been met." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "These certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Id*. The party pursuing the interlocutory appeal bears the burden of demonstrating that the certification requirements have been met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).

"Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n. 6 (9th Cir. 2002). Section 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). "It was not intended merely to provide review of difficult rulings in hard cases." *United States Rubber Co.*, 359 F.2d at 785.

"Even where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James*, 283 F.3d at 1067 n.6 (9th Cir. 2002) (citation omitted); *see, e.g.*, *Avrahami v. Clark*, CV-19-04631-PHX-SPL. 2021 WL 1022542, at *2 (D.C. Ariz. Feb. 12, 2021) (finding that question as to whether attorney-client privilege applied did not "on its face . . . appear to be a controlling question of law" but nonetheless certifying issue for appeal); *but see Avrahami v. Clark*, No. 21-80011, Docket Entry: 4 (9th Cir. Apr. 15, 2021) (Order denying petition for permission to appeal pursuant to 28 U.S.C. § 1292(b)).

## 1. Controlling Question of Law

A "controlling question of law" is one that will "materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (citing *United States Rubber Co.*, 359 F.2d at 785). Examples of "controlling

questions" include "determinations of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied." *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959).

"[T]he question of privilege . . . involves nothing as fundamental as the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law shall be applied." *Id.* (holding that privilege issue was collateral and thus not a controlling question within the meaning of § 1292(b)). "Ordinarily it is difficult to believe that a discovery order will present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation." Wright & Miller, § 2006 Appellate Review of Discovery Orders, 8 Fed. Prac. & Proc. Civ. § 2006 (3d ed.).

As presented by Miller, the question for appeal is "whether the communications at issue are protected by the attorney-client privilege, work [product] privilege, and the common interest doctrine[.]" ECF No. 48 at 5. This is not a "pure question of law," but rather, would require the court of appeals to apply the law to a particular set of facts. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("[Section] 1292 appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling

question of law without having to delve beyond the surface of the record in order to determine the facts.").

The basic issue in this case is whether the loan payments from PSF to Miller were made with the purpose to "evade or avoid" withdrawal liability or otherwise in violation of federal and state law, not whether Miller waived any privileges as to communications regarding the loans or repayment on the same. *Woodbury*, 263 F.2d at 788. Therefore, the issue of whether the communications are privileged is collateral to the basic issues of the case and is not a "controlling question of law." *See City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) (noting that review of a discovery order is not available under 28 U.S.C § 1292(b) because it is not a "controlling question of law" that would be appropriate for certification).

To the extent the question for appeal should be whether parties cannot have joint defense privileged communications because as lender and borrower they are necessarily adverse, and the Court should certify this question for appeal based upon the "new legal question or is of special consequence" language from *Mohawk*, ECF No. 48 at 5, this Court joins the District Court for the Western District of Washington in rejecting the proposition that a privilege issue purportedly involving a new legal question meets § 1292's requirements, notwithstanding the language from *Mohawk*. *See, e.g.*, *In re Examination of Privilege Claims*, No. MC15-0015-JCC-JPD, 2016 WL 11713117, at *2 (W.D. Wash. Jan. 25, 2016).

Furthermore, the Court's Order did not rule that parties in a lender and borrower relationship cannot have any joint defense privileged communications, and such interpretation of the Court's Order is incorrect. Rather, the Court's Order acknowledges that such communications may exist even in the context of the lender and borrower relationship in granting a limited exception to Miller's previously found waiver, allowing Miller to continue assert the privileged nature of communications that are responsive to Requests for Production Nos. 9 and 10–12 subpart (d) regarding withdrawal liability. *See* ECF No. 44 at 15–16 ("Such communication or correspondence as it relates to PSF's withdrawal liability could have been made in furtherance of the purported joint interest in defending against PSF's withdrawal liability.").

Accordingly, Miller has failed to establish that the issue of "whether the communications at issue are protected by the attorney-client privilege, work [product] privilege, and the common interest doctrine" is a "controlling question of law" under 28 U.S.C. § 1292(b).

**2. Substantial Ground for Difference of Opinion**

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. A party's disagreement with the Court's ruling is not sufficient for there to be "substantial ground for difference of opinion." *Id.*

Miller "respectfully submits that fair-minded judges could disagree whether the communications at issue are privileged attorney work product and/or under the common interest doctrine." ECF No. 58 at 5. However, the Court's finding as to the inapplicability of the privileges is secondary to the Court's finding of waiver. Additionally, Miller's disagreement with the Court's ruling is insufficient to show that a "substantial ground for difference of opinion" exists.

### 3. Materially Advance the Ultimate Termination of Litigation

Although the Court need not examine the third prong in great detail because the first two prongs are not met, the third prong also supports denying Miller's request for certification. Immediate appeal of the issue as to whether the communications at issue are protected by the attorney-client privilege, work product privilege, and the common interest doctrine will not necessarily materially advance the ultimate termination of litigation in this case. Even if the appellate court found that Miller had not waived the privileges, and those privileges applied to the withheld communications, the parties' claim and counterclaims related to "evade or avoid" liability would remain.

Therefore, the Court will not certify for interlocutory appeal the issue of "whether the communications at issue are protected by the attorney-client privilege, work product privilege, and the common interest doctrine."

/ / /

/ / /

## B. Perlman Rule

Alternatively, Miller argues that review is warranted as a matter of right to protect a third party's privileged information under *Perlman v. United States*, 247 U.S. 7 (1918). ECF No. 58 at 9. Miller contends that there "is no meaningful difference for purposes of applying the *Perlman* policy" between a motion to compel directed at Miller and a discovery order directed at PSF because "an appeal by Miller is the only vehicle to protect PSF's privileged information." ECF No. 58 at 10.

Under the *Perlman* rule, "a discovery order directed at a 'disinterested third-party custodian of privileged documents' is immediately appealable because 'the third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation.'" *United States v. Krane*, 625 F.3d 568, 572 (9th Cir. 2010) (citing *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006)).

The Fund asserts that the *Perlman* rule does not apply to the Court's Order Granting Defendants' Motion to Compel Discovery for three reasons: (1) the *Perlman* rule does not apply in the context of ongoing civil litigation, *see In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*, 857 F.2d 1238, 1240 (9th Cir. 1988) ("Thus, we conclude that the *Perlman* rule does not apply to render appealable discovery orders issued in an ongoing civil case."); (2) the denial of immediate review does not render impossible "any review whatsoever"; and (3) the

rule only applies to subpoenas that are directed to disinterested third parties, and does not apply to third parties who are "closely affiliated" with parties to the litigation, *see Waymo LLC v. Uber Tech., Inc.*, 870 F.3d 1350, 1366 (Fed. Cir. 2017). ECF No. 79 at 2–7.

Given the Ninth Circuit's conclusion that "the *Perlman* rule does not apply to render appealable discovery orders issued in an ongoing civil case," *In re Nat'l Mortg. Equity Corp.*, 857 F.2d at 1240, the Court concludes that the *Perlman* rule is inapplicable here. Furthermore, PSF's actions are central to the Fund's counterclaims and therefore, "it seems clear that [PSF] is no 'disinterested' third party." *Waymo LLC*, 870 F.3d at 1366 (citation omitted).

### III. Request to Maintain Stay

Miller requests that the Court maintain the stay of enforcement of the Order Granting Defendants' Motion to Compel Discovery pending Miller's petition for review. ECF No. 48 at 4 (citing 9th Circuit Rule 27-1. Motions for Stays Pending Appeal) ("If a district court stays an order or judgment to permit application to the Court of Appeals for a stay pending appeal, an application for such stay shall be filed in the Court of Appeals within 7 days after issuance of the district court's stay"). Having declined to certify the issue for appeal, and finding that an appeal of the Court's Order would be futile, the Court declines to further stay enforcement of the Order.

The Fund may move for reasonable expenses, including attorneys' fees, incurred in preparing its Response to Miller's Motion for Reconsideration, as well as responding to Miller's Motion to Stay, as they directly relate to the Fund's Motion to Compel Discovery. *See* Fed. R. Civ. P. 37(a)(5)(A).

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Reconsideration of Order Compelling Discovery or for Clarification, **ECF No. 49**, is **DENIED**.

Plaintiff shall produce all responsive documents Requests for Production Nos. 6 through 13 and 16 in Defendants' First Set of Discovery Requests relating to any payments on or repayment of any loans within **fourteen (14) days** of this Order. Plaintiff may continue to assert the privileged nature of documents which are responsive to Requests for Production Nos. 9, 10(d), 11(d) and 12(d), provided those communications and correspondence were made in furtherance of the asserted joint interest in defending against withdrawal liability.

2.      The stay of enforcement of the Order Granting Defendants' Motion to Compel Discovery, **ECF No. 44**, is **lifted**.

3.      The Court declines to certify the issue of "whether the communications at issue are protected by the attorney-client privilege, work project privilege, and the common interest doctrine" for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

4.      Defendants may, within fourteen (14) days of this Order, move for reasonable expenses in responding to Plaintiff's Motion for Reconsideration, ECF

No. 49, and Motion to Stay, ECF No. 48, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). Plaintiff shall respond to any such motion within fourteen (14) days thereafter, and Defendants may reply within seven (7) days thereafter.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** July 12, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge
